UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNARA POTEAT,<br>*Plaintiff*,<br><br>v.<br><br>HARTFORD HOUSING *et al.*,<br>*Defendants*. | No. 3:21-cv-01432 (JAM) |

**OMNIBUS RULING RE PENDING MOTIONS**

Plaintiff Kennara Poteat has filed this *pro se* lawsuit against numerous defendants claiming that they have violated her fair housing rights. This ruling addresses several of the defendants' motions to dismiss and for judgment on the pleadings as well as numerous motions filed by Poteat.

### BACKGROUND

The amended complaint identifies four groups of defendants: (1) the Housing Authority of the City of Hartford ("Hartford Housing Authority") and two of its employees (Margarita Palmer and Ben Bare); (2) the Enfield Housing Authority and one of its employees (Giovanna Bacile); (3) the Connecticut Commission on Human Rights and Opportunities ("CHRO") and three of its employees (Michelle Dumas Keuler, Robert Zamlowski, and Cynthia Dryfe); and (4) the U.S. Department of Housing and Urban Development ("HUD").[1]

The amended complaint is disjointed and at times hard to follow. By way of background, Poteat alleges that in 2010 and 2011 she filed cases with the CHRO alleging that the Hartford

---

[1] Doc. #8 at 1. The complaint appears to misspell some of the defendants' names, and this ruling refers to what I understand is the defendants' true names as reflected in the filings of defense counsel. The complaint also names one more defendant—Shan Riddick—but does not say anything about this defendant or with what agency this defendant is affiliated. According to one of the exhibits filed by Poteat with her complaint, the Enfield Housing Authority employs a person named "Shari Riddick" to receive requests for disability accommodations. Doc. #8-1 at 46.

1

Housing Authority had violated her civil rights.[2] Then, she moved into housing for the disabled.[3] She does not say who administered this housing, but it appears from the amended complaint that it was the Hartford Housing Authority. Poteat claims she faced harassment, discrimination, breach of contract, fabrication of statements by the Hartford Housing Authority, and attempted eviction.[4] She thought that her federal fair housing rights had been violated, brought a proceeding before the CHRO in 2012, and ultimately settled with the Hartford Housing Authority for $68,410.96.[5]

But then, she says, the Hartford Housing Authority breached the settlement agreement. So she sued again, and this time settled her claims against the Hartford Housing Authority for $25,000 in March 2018.[6] As part of the settlement, she was banned from entering Hartford Housing Authority property.[7]

At some later time, Poteat received a "Section 8" housing voucher.[8] This is a federally funded rental subsidy benefit for low-income persons or families.[9] A recipient of a Section 8 housing voucher is free to choose any housing that meets the requirements of the Section 8 program and is not limited by the voucher to living in housing units that are located in subsidized housing projects.[10]

---

[2] Doc. #8 at 2 (¶¶ 1–2).
[3] *Id.* at 2–3 (¶¶ 3–4).
[4] *Id.* at 3 (¶ 5).
[5] *Id.* at 4–5 (¶¶ 8–9, 11–12).
[6] *Id.* at 5–6 (¶¶ 13–16).
[7] *Id.* at 6 (¶ 16); *see also* Doc. #79-2 at 10.
[8] Doc. #8 at 6 (¶ 17).
[9] *See* U.S. Dep't of Hous. and Urban Dev., *Housing Choice Vouchers Fact Sheet*, available at https://www.hud.gov/topics/housing_choice_voucher_program_section_8 (last accessed Jan. 29, 2023) [https://perma.cc/7DRC-PBAW].
[10] *Ibid.*

The Hartford Housing Authority describes the Section 8 program on its own website.[11] The website notes that "[a] family that is issued a housing voucher is responsible for finding a suitable housing unit of the family's choice where the owner agrees to rent under the program," and that "a housing subsidy is paid to the landlord directly by the Housing Authority on behalf of the participating family."[12] According to the Connecticut Department of Housing, there are more than 40 public housing agencies that administer Section 8 vouchers in Connecticut.[13]

It appears that the Section 8 voucher that Poteat initially received was issued by the Enfield Housing Authority.[14] Poteat claims that the Enfield Housing Authority discriminated against her with respect to this Section 8 housing voucher.[15] In particular, Giovanna Bacile of the Enfield Housing Authority tried to help Poteat secure a studio apartment with her federal housing voucher, but the unit fell through.[16] Although Bacile claimed that there had been a technical error, Poteat believes that she really lost the apartment because of her race and in retaliation for previously filing a complaint.[17]

It appears that Poteat next decided to try to "port" her Section 8 housing voucher so that she could use it to live in an area outside the area served by the Enfield Housing Authority.[18] Federal regulations require that a Section 8 voucher be "portable" in the sense that a recipient

---

[11] *See* Hartford Hous. Auth., *Housing Choice Voucher Program*, available at https://www.hartfordhousing.org/housing_choice_voucher_section_8_/index.php (last accessed Jan. 29, 2023) [https://perma.cc/F3HY-PUQD].
[12] *Ibid.*
[13] State of Conn. Dep't of Hous., *Section 8 Housing Choice Voucher Program*, available at https://portal.ct.gov/DOH/DOH/Programs/Section-8-Housing-Choice-Voucher-Program (last accessed Jan. 29, 2023) [https://perma.cc/7PBJ-X77Q].
[14] Doc. #8-1 at 46.
[15] Doc. #8 at 6 (¶ 17).
[16] Doc. #8 at 6–8 (¶¶ 16–26).
[17] *Id.* at 8–9 (¶¶ 26–27).
[18] *Id.* at 10 (¶ 31).

may use the voucher to move to a unit anywhere in the United States that is outside the jurisdiction of the public housing agency that initially issued the recipient's voucher.[19]

What this means is that the administration of the housing voucher must be transferred from the initial public housing agency ("PHA") that issued the voucher to a receiving PHA that has jurisdiction over the geographic area where the recipient wishes to live. Federal regulations provide that "the receiving PHA must administer assistance for the family if a PHA with a [voucher] program has jurisdiction in the area where the unit is located."[20] Moreover, "[a] receiving PHA cannot refuse to assist incoming portable families or direct them to another neighboring PHA for assistance," and "the PHA must have approval in writing from HUD before refusing any incoming portable families."[21]

Poteat alleges that on referral by the Enfield Housing Authority she tried to "port" her voucher to the Hartford Housing Authority.[22] But the Hartford Housing Authority and its employees Margarita Palmer and Ben Bare declined to help her. Palmer told Poteat that there was a restraining order which prevented the Hartford Housing Authority from administering the voucher.[23] Bare told Poteat that she had signed a settlement agreement providing that she could not enter onto any Hartford Housing Authority property.[24]

Bare wrote an email to Poteat which states in relevant part:

> I understand that your voucher was issued by the Enfield Housing Authority and you are attempting to use it for an apartment in Hartford. As you are aware, you signed a settlement agreement with Hartford Housing in 2018. As a part of that settlement agreement you acknowledged that you could not enter onto any Hartford Housing property.

---

[19] 24 C.F.R. § 982.353(b); *see also* Hartford Hous. Auth., *Portability*, available at https://www.hartfordhousing.org/housing_choice_voucher_section_8_/portability_.php (last accessed Jan. 29, 2023) [https://perma.cc/2MVB-X95Y].
[20] 24 C.F.R. § 982.355(a).
[21] 24 C.F.R. § 982.355(b).
[22] Doc. #8 at 10 (¶ 31).
[23] *Id.* at 11 (¶ 32).
[24] *Ibid.* (¶ 33).

> The Authority cannot administer your voucher if you cannot come into our offices for certain administrative matters.
>
> Your voucher can be ported to either the City of Hartford or to Imagineers. Either one of those would allow you to utilize your voucher as you see fit.[25]

According to Poteat, the reasons furnished by Palmer and Bare are not valid, because Poteat did "not need to go on any property with a Section 8 voucher because she [could] rent from anywhere and mail in corresponden[ce]."[26]

As to the defendant CHRO, Poteat makes two allegations. First, she claims that when she participated in a mediation with the CHRO, the CHRO wrongly took Enfield Housing Authority's side, tried to cover up Enfield Housing Authority's past discrimination and retaliation, and "insulted" her.[27] Second, she claims that in some unspecified way the CHRO denied "reasonable accommodations" for a disability.[28]

As to the defendant HUD, Poteat makes no allegations at all except to name HUD as a defendant. She does not allege facts to show that she communicated with HUD or that anyone at HUD engaged in any discrimination, retaliation, or violation of her rights.

Poteat claims that the Hartford Housing Authority and its employees, Palmer and Bare, violated the Fair Housing Act ("FHA") and 42 U.S.C. § 1982.[29] She also appears to bring breach-of-contract and fraud claims against the Hartford Housing Authority.[30] Similarly, Poteat alleges that that the Enfield Housing Authority and Giovanna Bacile violated § 1982, and that Bacile further violated the FHA and committed fraud.[31] She further claims that the CHRO

---

[25] Doc. #8-1 at 3. The email is dated "Oct 29" but without reference to a calendar year.
[26] Doc. #8 at 11 (¶ 34).
[27] *Id.* at 9–10 (¶¶ 28–30).
[28] *Id.* at 9 (¶ 28).
[29] *Id.* at 2 (¶ 1).
[30] *Id.* at 3 (¶ 5), 5 (¶ 13).
[31] *Id.* at 6 (¶ 17), 9 (¶ 27).

5

violated the FHA and Conn. Gen. Stat. § 46a-98a, Connecticut's housing discrimination statute.[32] As noted above, Poteat alleges no facts about HUD and states no legal claims against HUD. Poteat seeks $600,000 in relief.[33]

Three of the four groups of defendants—the CHRO defendants, HUD, and the Hartford Housing Authority defendants—have moved to dismiss or for judgment on the pleadings pursuant to Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure.[34] For her part, Poteat has filed numerous motions including for judgment on the pleadings, for default, to withdraw certain defendants, and for other forms of relief.[35]

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).[36] The "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

The Court need not accept allegations that couch legal conclusions in the form of factual allegations or that are otherwise conclusory. *See Hernandez*, 939 F.3d at 198. In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—states enough facts to establish a facially plausible claim for relief. "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

---

[32] *Id.* at 3 (¶ 6), 4 (¶ 10).
[33] *Id.* at 13 (¶ 37).
[34] Docs. #50, #55, #79. The Enfield Housing Authority and Bacile have filed an answer to the complaint without filing a motion to dismiss or for judgment on the pleadings. Doc. #67.
[35] Docs. #21, #22, #23, #24, #25, #63, #72, #81, #82, #87, #100, #101.
[36] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

The Court liberally construes the pleadings of a *pro se* party in a non-technical manner to raise the strongest arguments that they suggest. *See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (*per curiam*). Still, a *pro se* complaint may not survive if its factual allegations do not meet the basic plausibility standard. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

### *CHRO motion to dismiss (Doc. #50)*

The CHRO defendants move to dismiss on the ground that the CHRO has sovereign immunity as an agency of the State of Connecticut. It is well settled that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits by private citizens against the States, any state government entities, and any state government officials in their official capacities. *See generally Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017); *T.W. v. N.Y. State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). Because Connecticut has not waived its Eleventh Amendment immunity for the CHRO nor has Congress abrogated it, the Eleventh Amendment bars claims against the CHRO. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Bogle-Assegai v. Comm'n on Hum. Rts. & Opportunities*, 331 F. App'x 70, 71 (2d Cir. 2009).

As for Poteat's claims against CHRO employees such as Keuler, Zamlowski, and Dryfe, the complaint fails to allege any facts about what each of them did wrong to violate Poteat's rights. Therefore, the complaint fails to state plausible grounds for relief against any of these CHRO employees.

In any event, to the extent Poteat is suing the CHRO employees in their official capacities, the Eleventh Amendment bars her suit for the same reasons it bars her suit against the

CHRO. *See Pennhurst*, 465 U.S. at 100–01; *White v. Martin*, 26 F. Supp. 2d 385, 387–88 (D. Conn. 1998), *aff'd sub nom. White v. Comm'n of Hum. Rts. & Opportunities*, 198 F.3d 235 (2d Cir. 1999). To be sure, there is an exception that allows a suit to proceed against state officials in their official capacities for prospective injunctive relief from ongoing violations of federal law. *See In re Deposit Ins. Agency*, 482 F.3d 612, 617–18 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)). But Poteat does not allege that CHRO officials are involved in any ongoing violation of her federal rights.

To the extent Poteat is suing the CHRO employees in their individual capacities, the suit is barred by absolute immunity. State officials who carry out quasi-judicial functions are entitled to absolute immunity. *See White*, 26 F. Supp. 2d at 388–90, *aff'd*, 198 F.3d 235. This includes CHRO employees engaged in adjudicatory or investigative functions. *Id*. at 390. It also includes employees who partake in mediation. *See DeSouza v. Kennedy*, 2017 WL 3431393, at *5–7 (D. Conn. 2017) (citing cases).

It is unclear what actions the CHRO employees took, given that Poteat's complaint lacks any allegations against them. But to the extent Poteat asserts that the employees violated her rights in carrying out their adjudicatory or investigative functions, absolute immunity bars Poteat's claims against them. And to the extent that she claims that the CHRO or its employees denied her a reasonable accommodation, she does not allege facts to establish that she has a disability or what reasonable accommodation was denied.

In short, Poteat does not allege plausible grounds for relief against the CHRO or its employees. Accordingly, I will grant the motion to dismiss of the CHRO defendants. I will grant this motion with prejudice in the absence of any showing or reasonable prospect that Poteat could state plausible grounds for relief against the CHRO defendants.

### *HUD's motion to dismiss (Doc. #55)*

HUD moves to dismiss. As noted above, Poteat does not allege any facts about what HUD did to violate her rights. For this reason alone, the complaint against HUD fails to state plausible grounds for relief.

In any event, as a government agency, HUD enjoys sovereign immunity absent waiver by Congress. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "[T]he plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 400 (2d Cir. 2017). Because Poteat does not identify any basis for why sovereign immunity does not bar suit against HUD or otherwise show that HUD has waived its immunity, I will grant HUD's motion to dismiss on sovereign immunity grounds. I will grant this motion with prejudice in the absence of any showing or reasonable prospect that Poteat could state plausible grounds for relief against HUD.

### *Hartford Housing Authority motion for judgment on the pleadings (Doc. #79)*

The Hartford Housing Authority defendants move for judgment on the pleadings as to all the claims alleged against them. Poteat's first claim alleges that the Hartford Housing Authority defendants engaged in unlawful discrimination under the federal Fair Housing Act. The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race ...." 42 U.S.C. § 3604(b). Absent direct proof of discrimination, a plaintiff "must plausibly allege that he [1] is a member of a protected class, [2] suffered an adverse action, and [3] has at least minimal support for the proposition that the housing provider was motivated by discriminatory intent." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (*en banc*)

The problem for Poteat is that the amended complaint does not allege facts to suggest that the Hartford Housing Authority defendants discriminated against Poteat because of her race or because of any of her membership in any other protected class. Poteat's allegations resemble those of the plaintiff's in *Glover v. HPC-Eight, LLC*, 2022 WL 1004572 (D. Conn. 2022), a recent FHA case rejecting as conclusory a plaintiff's allegations that the defendants failed to adequately investigate her noise complaints because of her race. *Id.* at *5–6; *see also id.* at *9 (citing similar cases).

Poteat additionally alleges that the Hartford Housing Authority defendants retaliated against her because of her prior complaints and litigation with the Hartford Housing Authority about her rights under the FHA. The FHA allows a plaintiff to sue a defendant for retaliation against a plaintiff's protected activity such as complaining about housing discrimination. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53–54 (2d Cir. 2002) (citing 42 U.S.C. § 3617). To bring a *prima facie* claim for retaliation under the FHA, a plaintiff must show that she "was engaged in protected activity, that the defendant was aware of this activity, that the defendant took adverse action against the plaintiff, and [that] a causal connection exists between the protected activity and the adverse action." *Id.* at 54.

In my view, Poteat has alleged a plausible claim for retaliation. She has alleged her prior engagement in protected activity against the Hartford Housing Authority with respect to extensively litigating her federal housing rights against the FHA and leading to two settlements in her favor. She has also alleged that after this litigation the Hartford Housing Authority and defendants Palmer and Bare denied her the right to "port" her Section 8 housing voucher from the Enfield Housing Authority to the Hartford Housing Authority. Although Poteat was told that she could not "port" the voucher because she was legally barred from entering the property of the

Hartford Housing Authority, Poteat plausibly alleges that this justification was a pretext because the Hartford Housing Authority could have administered her voucher to allow her to rent an apartment somewhere in Hartford without requiring Poteat to enter the property of the Hartford Housing Authority. Giving a liberal construction to the *pro se* amended complaint, I conclude that Poteat has alleged enough facts surrounding the refusal to "port" her Section 8 voucher to support a claim against the Hartford Housing Authority, Palmer, and Bare for unlawful retaliation under the FHA.

The Hartford Housing Authority defendants argue that all of Poteat's claims are barred by her prior settlement and release agreements. But Poteat's retaliation claim rests on alleged conduct by the Hartford Housing Authority defendants that post-dates these agreements. The Hartford Housing Authority defendants do not point to language in the settlement or release agreements that forecloses Poteat's filing of a claim on the basis of later events.[37]

All that said, Poteat should not misinterpret the significance of my conclusion that she has stated a plausible retaliation claim. The fact that for initial pleading purposes Poteat has alleged a plausible legal claim does not mean that this claim will succeed. For example, on a fuller factual record, the Hartford Housing Authority defendants may be able to show that it was indeed impossible for them to have administered Poteat's Section 8 voucher without Poteat's entry onto Hartford Housing Authority property in violation of the settlement agreement. Or even if it would not have been impossible for Hartford Housing Authority to administer her voucher, the Hartford Housing Authority defendants may be able to show that they had a genuine and good faith concern that it would be particularly difficult to administer Poteat's Section 8

---

[37] Although the amended complaint details by way of background Poteat's prior litigation with the Hartford Housing Authority, I do not interpret the amended complaint to state any claims seeking relief for acts by the Hartford Housing Authority defendants that occurred prior to the settlement and release agreements.

11

voucher if she could not enter onto Hartford Housing Authority property. And they may be able to show that it was this good faith concern—rather than any intent to penalize Poteat for her prior litigation of her FHA rights—that explains why the Hartford Housing Authority declined Poteat's request for assistance to "port" her voucher.

A fuller factual record may also shed light on why Poteat did not seek to "port" her voucher through other public housing agencies such as the City of Hartford or Imagineers as Bare suggested in his email to Poteat. If Poteat could have worked with another housing agency in Hartford rather than with an agency with which she had been previously embroiled in litigation and was barred from entering the agency's property, it is unclear why Poteat did not simply choose that option rather than initiating this lawsuit in which she now claims that the defendants have caused her to be homeless without any means to secure housing.[38] Judge Richardson has stated similar concerns about why Poteat will not work with the Connecticut Department of Housing which could also administer her voucher without the complications involved with the Hartford Housing Authority.[39]

Poteat additionally alleges that the Hartford Housing Authority defendants violated her rights under 42 U.S.C. § 1982. This statute provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. But because—as discussed above—Poteat has made only conclusory allegations that the Hartford Housing Authority defendants discriminated against her, her claim for discrimination under § 1982 fails for the same reason as her claim for discrimination under the FHA. *See Francis*, 992

---

[38] Doc. #102 at 2.
[39] Doc. #78.

F.3d at 80 (rejecting § 1982 discrimination claim and FHA discrimination claim for the same reasons).

Poteat also appears to allege a claim for breach of contract against the Hartford Housing Authority.[40] "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). Because Poteat does not allege facts to show that she ever formed an agreement with any of the Hartford Housing Authority defendants to "port" her voucher, the amended complaint does not allege plausible grounds for a claim of breach of contract.

Poteat also alleges a claim for fraud. But she does not plead the claim with particularity as required under Fed. R. Civ. P. 9(b).

In short, I will grant in part and deny in part the motion of the Hartford Housing Authority defendants for judgment on the pleadings. I will grant the motion for judgment on the pleadings without prejudice as to Poteat's claims for discrimination under the FHA and § 1982 as well as to Poteat's state law claims for breach of contract and fraud. On the other hand, I will deny the motion as to Poteat's claim for retaliation under the FHA.

*Poteat's motions (Docs. #21, #22, #23, #24, #25, #63, #72, #81, #82, #87, #100, #101)*

Poteat has filed many motions, and I will address them in numerical order as they have been filed on the docket.

Doc. #21 is titled "Plaintiff Motion for Partial Judgment on the Pleadings," but it appears to be in part a motion for default judgment as to all defendants.[41] Because the scant terms of the

---

[40] Doc. #8 at 3 (¶ 5).
[41] Doc. #21.

13

3-page motion lack any detailed explanation of the grounds for the Court to enter judgment in Poteat's favor, I will deny this motion.

Docs. #22 and #23 request that the Court move Poteat's state court cases to federal court for the purpose of granting default judgment against the defendants. I will deny these motions because the Court lacks the authority to transfer a case from a state court.

Docs. #24 and #25 are motions that bear state court captions and that appear to have been mis-filed in this action rather than in state court. Because I cannot grant a motion for relief that a party has directed to a different court, I will deny these two motions.

Doc. #63 is a motion for default judgment against the Hartford Housing Authority and Bare. The Hartford Housing Authority and Bare filed an answer on the same day that this motion was filed.[42] It is unclear, however, that their answer was filed late. The docket shows that requests for waiver of service were sent by the U.S. Marshal's Service to the Hartford Housing Authority and Bare on May 20, 2022.[43] A waiver-of-service form was filed on June 3, 2022 which pursuant to Fed. R. Civ. P. 12(a)(1)(A) would have allowed up to 60 days from May 20, 2022 to respond to the complaint.[44] But even assuming that the answer was filed late, I would not grant the motion for default judgment, because federal courts prefer to resolve disputes on their merits rather than by default, and Poteat has not alleged or shown any prejudice due to the filing of a late answer. *See Manigault v. ABC Inc.* 796 Fed. App'x 13, 15–16 (2d Cir. 2019) (district court may accept late-filed answer absent showing of prejudice). Accordingly, I will deny Poteat's motion for default judgment against the Hartford Housing Authority and Bare.

---

[42] Doc. #65.
[43] Docs. #28, #36.
[44] Doc. #47.

14

Doc. #72 is a motion for partial judgment on the pleadings against the Hartford Housing Authority. But the motion is only one page, and although it states that there is an accompanying memorandum of law, no memorandum has been filed with the motion. I will deny the motion for failure to file a memorandum and to otherwise substantiate Poteat's claim that judgment should be entered in her favor against the Hartford Housing Authority. *See* D. Conn. L. Civ. R. 7(a)(1) (stating that "[a]ny motion involving disputed issues of law shall be accompanied by a memorandum of law" and that "[f]ailure to submit a required memorandum may be deemed sufficient cause to deny the motion"). Again, as noted above, the fact that the Court has concluded that Poteat has stated a plausible retaliation claim against the Hartford Housing Authority defendants does not mean that Poteat is entitled at this time to judgment in her favor in the absence of her prevailing at trial or by way of a well-supported motion for summary judgment pursuant to Fed. R. Civ. P. 56 and D. Conn. L. Civ. R. 56.

Doc. #81 requests that the Court stop defendants' abuse of power, use its authority to expeditiously resolve Poteat's claims, and grant relief in the form of a declaratory judgment that the defendants violated 42 U.S.C. § 3617 and Conn. Gen. Stat. § 46a-64c(9), a permanent injunction barring the defendants from interfering with Poteat's exercising her rights, and actual and consequential damages pursuant to 42 U.S.C. § 3613(c) and Conn. Gen. Stat. § 46a-98a.[45] Because this action remains at the initial pleadings stage, it would be premature and unwarranted to grant Poteat's request for immediate judgment in her favor.

Doc. #82 moves for leave to file a second amended complaint. But this motion does not comply with the Court's requirement that Poteat state whether she has consulted with the defendants about the filing of the amended complaint and whether they consent or object to its

---

[45] Doc. #81 at 1, 3.

filing. *See* D. Conn. L. Civ. R. 7(f); *Lindsay v. Univ. of Conn. Health Ctr.*, 2020 WL 2097629, at *1 (D. Conn. 2020) (denying *pro se* plaintiff's motion to file an amended complaint for lack of compliance with Rule 7(f)). Accordingly, I will deny this motion but, as explained at the end of this ruling, I will independently afford Poteat an opportunity to file a second amended complaint within 30 days.

Doc. #100 is a motion to withdraw Poteat's claims against the CHRO and HUD (Doc. #100). I will grant this motion with prejudice, consistent with my ruling above that Poteat has not alleged plausible grounds for relief against the CHRO or HUD.

Doc. #101 again seeks a default judgment. But because I have already ruled above that there are no grounds for the entry of default in Poteat's favor, I will deny this motion.

## CONCLUSION

For the reasons set forth above, the Court will enter the following ruling on pending motions:

The Court GRANTS with prejudice the motion to dismiss of CHRO, Keuler, Zamlowski, and Dryfe (Doc. #50).

The Court GRANTS with prejudice the motion to dismiss of HUD (Doc. #55).

The Court GRANTS in part and DENIES in part without prejudice the motion for judgment on the pleadings of the Hartford Housing Authority, Palmer, and Bare (Doc. #79).

The Court GRANTS with prejudice Poteat's motion to withdraw her claims against the CHRO and HUD (Doc. #100) but DENIES all other motions (Docs. #21, #22, #23, #24, #25, #63, #72, #81, #82, #87, #101).

In light of this ruling, Poteat may file a second amended complaint on or before **March 1, 2023**. If Poteat chooses to file a second amended complaint, then she should very carefully

consider what claims and defendants to include. Any amended complaint may not restate claims against the CHRO defendants or HUD which the Court has dismissed with prejudice. Any second amended complaint must contain a complete statement of Poteat's factual allegations as to each defendant and may not merely incorporate by reference the allegations of any prior complaint. Any second amended complaint should clearly state any separate claims or causes of action as well as any requested relief. Beyond this opportunity for Poteat to timely file a second amended complaint if she wishes, the Court is unlikely to allow Poteat to file further amendments to the complaint absent a showing of good cause for not previously alleging such amendments.

If Poteat chooses not to file an amended complaint, then this action shall proceed solely on the basis of the amended complaint (Doc. #8) as to Poteat's claims against the Enfield Housing Authority defendants and as to the one remaining claim for FHA retaliation against the Hartford Housing Authority, Palmer, and Bare.

It is so ordered.

Dated at New Haven this 30th day of January 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge